[No. S069783. June 1, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY GARCIA, Defendant and Appellant.

## COUNSEL

Robert Navarro, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sanjay T. Kumar, Kenneth C. Byrne, Pamela C. Hamanaka and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—In this case, we consider whether a trial court, when applying the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d))[1] may exercise its discretion under section 1385, subdivision (a), so as to dismiss a prior conviction allegation with respect to one count but not

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

another. We conclude that a court may exercise its discretion in this way and that the trial court did not abuse its discretion in doing so here. Accordingly, we reverse the judgment of the Court of Appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 19, 1996, Barbara Gantt left her home suddenly to go to the hospital and inadvertently left a window open. She returned home less than two hours later and found the place ransacked. Various items were missing, including a translating machine, jewelry, and a videocassette recorder. As she was cleaning up, she found a wallet with defendant's driver's license on the floor among some of her papers.

On September 4, 1996, Grace Kobel returned home to find defendant bicycling out of her driveway. A window was broken, the screen was lying on the ground, and her front door was open. Kobel called the police, who arrived a few minutes later. She entered the house with the police and found various items missing, including a telephone, jewelry, and a toy airplane. About the same time, police officers spotted defendant riding a bicycle several blocks away and stopped him. Defendant was holding two plastic bags that contained many of the items missing from Kobel's home. He also had jewelry in his pockets.

Defendant admitted burglarizing the Gantt and Kobel homes. He described the burglaries in detail and pointed out their locations as police drove him around in a van. He also admitted a third burglary and pointed out its location.

The district attorney charged defendant with three counts of burglary (§ 459), but moved to dismiss the second count in exchange for defendant's waiving his right to a jury trial. The court granted the motion. The remaining counts related to the burglaries of the Gantt and Kobel homes. The court found defendant guilty on both counts. The court also found true an allegation that defendant had five prior serious felony convictions qualifying as "strikes" for purposes of the Three Strikes law. (See *People* v. *Fuhrman* (1997) 16 Cal.4th 930, 932, fn. 2 [67 Cal.Rptr.2d 1, 941 P.2d 1189] ["We use the term 'strike' to describe a prior felony conviction that qualifies a defendant for the increased punishment specified in the Three Strikes law."].) These convictions, all on July 17, 1991, were for five burglaries (§ 459) that took place on separate occasions during a short crime spree. The court also found that the same five burglary convictions qualified as one prior serious felony conviction for purposes of the five-year enhancement set forth in section 667, subdivision (a)(1). Finally, for purposes of the one-year

enhancement set forth in section 667.5, subdivision (b), the court found true an allegation that defendant had served three prior prison terms. The first of these terms was for a January 10, 1985, conviction for receiving stolen property (§ 496), the second for a February 19, 1987, conviction for possession of heroin (Health & Saf. Code, § 11350, subd. (a)), and the third for the five 1991 burglary convictions already mentioned.

At the sentencing hearing, the court considered a probation report indicating defendant had a history of burglarizing homes and then trading stolen property for drugs. Barbara Gantt and Grace Kobel then described the impact defendant's crimes had on them and asked the court to give defendant the maximum sentence. Next, defendant's girlfriend described defendant's difficult life, saying he grew up in foster homes and was addicted to heroin by age 12. Finally, defendant expressed remorse about the burglaries and asked for forgiveness.

Defense counsel then asked the court to exercise its discretion under section 1385, subdivision (a) (see *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*)), and dismiss, or "strike," four of the five prior conviction allegations as to both counts, thereby making the case a "second strike" case and reducing defendant's sentence to a term of twenty-two years and eight months. The court responded that "the interests of justice would not be served by striking four strikes in this case," and to do so "would be for the sole purpose of avoiding the sentence I'm required to hand down by law." The court noted that defendant committed five separate residential burglaries, went to state prison, and then, shortly after his release and while still on parole, committed two more residential burglaries. "[I]f the Three Strikes law was meant for anyone it was meant for Mr. Garcia," the court said. The court also concluded that the crimes "were not committed out of a need by Mr. Garcia to support a drug habit." However, the court granted defendant's request for a continuance to present further evidence connecting the crimes to drug addiction. At a subsequent hearing, defendant's aunt testified about defendant's difficult childhood and drug use at age 12 or 13. Then, in argument, defense counsel further stressed defendant's long history of drug abuse.

After hearing this additional evidence and argument, the court agreed that defendant's drug addiction was "a factor in mitigation." The court also noted that all defendant's prior serious felony convictions arose from a single period of aberrant behavior for which he served a single prison term. The court commented that defendant had cooperated with police both in 1991 and when they arrested him for the current offenses. Finally, the court stated that defendant had no record of violence.

As to the Kobel burglary, the court sentenced defendant to a term of 30 years to life in state prison. This sentence included 25 years to life under the Three Strikes law plus the mandatory (§ 1385, subd. (b)) 5-year enhancement under section 667, subdivision (a)(1). The court initially imposed three 1-year enhancements under section 667.5, subdivision (b), for the prior prison terms, but then exercised its discretion under section 1385, subdivision (a), and struck these enhancements. As to the Gantt burglary, the court exercised its discretion under section 1385, subdivision (a), and struck all the prior conviction allegations. In a minute order, the court stated it was striking the prior conviction allegations because they "all refer [to] one case, defendant has cooperated with police in both cases, is addicted to drugs and has not suffered any violent priors." The court calculated a sentence of 16 months, which was one-third the middle term of 4 years.[2] The court ordered that this sentence be served consecutive to the sentence on the Kobel burglary, because the two counts reflected "two separate incidents on two separate dates." Nevertheless, the court stated that a sentence of 30 years to life was "appropriate" and that, but for the constraints of the Three Strikes law, it would have ordered that the 16-month sentence on the Gantt burglary be served concurrently. Defendant's total sentence on both counts was 31 years and 4 months to life. The court imposed a $200 restitution fine, and also ordered $400 restitution to Grace Kobel and $20,000 restitution to Barbara Gantt, less the value of any property returned.

Defendant appealed, arguing that his sentence constituted cruel and unusual punishment under the state and federal Constitutions. The Attorney General responded to defendant's argument. He also asserted that the trial court lacked authority under section 1385, subdivision (a), to strike the prior conviction allegations as to the Gantt burglary while not striking them as to the Kobel burglary, claiming that therefore defendant's sentence was unauthorized. The Court of Appeal agreed with the Attorney General, reversed the judgment, and remanded for resentencing. The court reasoned that striking prior conviction allegations as to some, but not all, current counts was inconsistent with the requirement in the Three Strikes law that sentences be consecutive for current felonies relating to separate criminal episodes. (§§ 667, subd. (c)(6), (7), 1170.12, subd. (a)(6), (7).) The court discussed *People* v. *Garcia* (1997) 59 Cal.App.4th 834 [69 Cal.Rptr.2d 463] (*Garcia*), which authorized trial courts to strike prior conviction allegations on a count-by-count basis. (*Id.* at p. 838.) The court argued that the holding in *Garcia* "eviscerates the requirements of the Three Strikes law that trial courts impose harsh terms for recidivists by sentencing consecutively." The court also distinguished *Garcia* because in that case the prosecution had

---

[2]After we filed our opinion, the question arose whether this calculation was legally correct. We express no opinion on this point but merely recite what the trial court actually did and decide the sole issue on which we granted review.

agreed to the sentence, calling it a " 'fair disposition.' " (*Ibid.*) The court did not address defendant's claim of cruel and unusual punishment, finding that issue "premature until the trial court has resentenced [defendant]."

We granted review in order to address whether, and in what circumstances, a trial court in a Three Strikes case may strike prior conviction allegations as to one count, but not as to another.

## DISCUSSION

Section 1385, subdivision (a), authorizes a trial court to act on its own motion to dismiss a criminal action "in furtherance of justice." We have long held that this power includes the ability to strike prior conviction allegations that would otherwise increase a defendant's sentence. (*People* v. *Burke* (1956) 47 Cal.2d 45, 50-51 [301 P.2d 241] (*Burke*).) Our reasoning in *Burke* is particularly relevant to the issue in this case. In *Burke*, the defendant had been convicted of possession of marijuana in violation of Health and Safety Code former section 11500 (see now Health & Saf. Code, § 11357, subd. (a)), and he admitted a prior conviction for the same offense. (*Burke*, *supra*, 47 Cal.2d at pp. 47, 50.) At that time, Health and Safety Code former section 11712 provided: "Any person convicted [of a former section 11500 violation] for having in possession any narcotic . . . [¶] [i]f such a person has been previously convicted [of a former section 11500 violation] . . . shall be imprisoned in the state prison for not less than two years . . . ." (Stats. 1953, ch. 1770, § 6, p. 3526; *Burke*, *supra*, 47 Cal.2d at pp. 49-50.) Nevertheless, the trial court struck the prior conviction allegation and sentenced the defendant to county jail. (*Burke, supra*, 47 Cal.2d at p. 50.) The Attorney General asked for reversal of the judgment for the purpose of increasing the sentence. (*Id.* at p. 47.) We noted that "[t]he procedure of 'striking,' or setting aside or dismissing, a charge of a prior conviction . . . is commonly used in trial courts . . . where . . . the trial court has concluded that 'in the interest of justice' defendant should not be required to undergo a statutorily increased penalty . . . ." (*Id.* at p. 50.) We concluded that this power to strike a sentencing allegation fell within the broader power to dismiss an entire action under section 1385. (*Burke, supra*, 47 Cal.2d at p. 51.) More importantly, however, we also concluded that "[t]he striking or dismissal of a charge of prior conviction . . . is not the equivalent of a determination that defendant did not in fact suffer the conviction [citations]; such judicial action is taken . . . 'for the purpose of sentencing' only and 'any dismissal of charges of prior convictions . . . does not wipe out such prior convictions or prevent them from being considered in connection with later convictions' [citation]." (*Ibid.*) Thus, we acknowledged that a court might strike a prior conviction allegation in one context, but use it in another.

In *Romero, supra*, 13 Cal.4th 497, we held that the Three Strikes law did not remove or limit this section 1385 power to strike sentencing allegations.

The defendant in *Romero* pleaded guilty to possession of 0.13 grams of cocaine base, in violation of Health and Safety Code section 11350, subdivision (a). (*Romero, supra,* 13 Cal.4th at pp. 506-507.) The information also alleged five prior felony convictions, two of which—attempted burglary (§§ 459, 664) and first degree burglary of an inhabited dwelling (§ 459)— qualified as strikes for purposes of the Three Strikes law. (*Romero, supra,* 13 Cal.4th at p. 506.) The trial court struck the prior conviction allegations and imposed a sentence of six years in state prison. (*Id.* at p. 507.) This sentence represented three years (the upper term) for possession of a controlled substance (Health & Saf. Code, § 11350, subd. (a); Pen. Code, § 18) plus three consecutive one-year enhancements for prior prison terms (§ 667.5, subd. (b)). (*Romero, supra,* 13 Cal.4th at p. 507.) The district attorney objected to the sentence and petitioned for a writ of mandate, which the Court of Appeal granted, concluding that the trial court had no power to dismiss the prior conviction allegations. (*Ibid.*) We disagreed. Specifically, we concluded that, in a Three Strikes case, the trial court can, on its own motion and over the prosecutor's objection, strike a prior conviction allegation in furtherance of justice. (*Id.* at pp. 504, 529-530.)

Our holding in *Romero* flowed directly from the plain language of the Three Strikes law, which expressly authorizes prosecutors to move to strike prior conviction allegations "pursuant to" section 1385, subdivision (a). (§§ 667, subd. (f)(2), 1170.12, subd. (d)(2).) We reasoned that, because the Three Strikes law makes express reference to section 1385 and does not anywhere bar courts from acting pursuant to that section, the drafters of the law must have intended that section to apply without limitation in Three Strikes cases. (*Romero, supra,* 13 Cal.4th at pp. 519-522; see also *id.* at pp. 524, 529.) In this regard, we stressed our prior decisions requiring " 'a clear legislative direction' " before we "interpret a statute as eliminating courts' power under section 1385." (*Romero, supra,* 13 Cal.4th at p. 518, quoting *People* v. *Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) We also stressed section 1385's "controversial history," because of which "references to the section in sentencing statutes are not lightly or thoughtlessly made." (*Romero, supra,* 13 Cal.4th at p. 522.) Accordingly, we concluded that the Three Strikes law does not limit the exercise of section 1385 discretion to cases involving a prosecutorial motion to strike. (*Romero, supra,* 13 Cal.4th at pp. 520-523.)

Nevertheless, we stressed that "[a] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited." (*Romero, supra,* 13 Cal.4th at p. 530.) Drawing from prior cases construing section 1385, we reaffirmed the " '[p]aramount' " principle that a trial court must " ' "consider[] both . . . the constitutional rights of the defendant, and *the interests*

*of society represented by the People . . . .* ' " (*Romero, supra,* 13 Cal.4th at p. 530, quoting *People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193], original italics.) We added that a court may not strike a sentencing allegation "solely 'to accommodate judicial convenience or because of court congestion.' " (*Romero, supra,* 13 Cal.4th at p. 531, quoting *People* v. *Kessel* (1976) 61 Cal.App.3d 322, 326 [132 Cal.Rptr. 126].) Nor may a court strike a sentencing allegation "simply because a defendant pleads guilty." (*Romero, supra,* 13 Cal.4th at p. 531.) Finally, we stated that a court may not strike a sentencing allegation " 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' " (*Ibid.,* quoting *People* v. *Dent* (1995) 38 Cal.App.4th 1726, 1731 [45 Cal.Rptr.2d 746].)

In *People* v. *Williams* (1998) 17 Cal.4th 148 [69 Cal.Rptr.2d 917, 948 P.2d 429] (*Williams*), we further delineated the parameters that govern a trial court's discretion under section 1385, subdivision (a), to strike prior conviction allegations in a Three Strikes case. *Williams* involved a defendant who pleaded guilty to driving a vehicle under the influence of phencyclidine (PCP) in violation of Vehicle Code section 23152, subdivision (a). (*Williams, supra,* 17 Cal.4th at pp. 152, 156.) The defendant had a 19-year criminal history, including convictions for attempted robbery, rape, and spousal battery, and a series of convictions for firearm possession and driving under the influence. (*Id.* at p. 154.) The attempted robbery and rape convictions, which the defendant admitted, qualified as strikes for purposes of the Three Strikes law. (*Id.* at pp. 153, 156, fn. 3.) However, because those convictions were about 13 years old (cf. §§ 667, subd. (c)(3), 1170.12, subd. (a)(3); *People* v. *Humphrey* (1997) 58 Cal.App.4th 809, 813 [68 Cal.Rptr.2d 269]) and " 'because of . . . the lack of any kind of violence related crimes from then until now' " (*Williams, supra,* 17 Cal.4th at p. 156), the trial court vacated its finding with respect to the prior attempted robbery conviction, leaving only the prior rape conviction. (*Id.* at p. 157.) The Court of Appeal concluded that the trial court had abused its discretion by vacating one of its prior conviction findings. (*Ibid.*) We agreed (*id.* at pp. 162-164) and in our opinion discussed the factors a trial court may legitimately consider when exercising its section 1385 discretion in a Three Strikes case. (*Williams, supra,* 17 Cal.4th at pp. 160-161.)

We said that the trial court could give "no weight whatsoever . . . to factors extrinsic to the [Three Strikes] scheme." (*Williams, supra,* 17 Cal.4th at p. 161.) On the other hand, the court must accord "preponderant weight . . . to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony

convictions, and the particulars of his background, character, and prospects." (*Ibid.*) Ultimately, a court must determine whether "the defendant may be deemed outside the scheme's spirit, in whole or in part." (*Ibid.*)

The reasoning of *Romero* and the standards we enunciated in *Williams* logically support the trial court's action in this case. In *Romero*, we concluded that, by referencing section 1385, the Three Strikes law incorporated that section without limitation. (*Romero, supra,* 13 Cal.4th at pp. 522-523.) Therefore, when the Three Strikes law incorporated section 1385, it also incorporated our holding in *Burke* interpreting that section. *Burke* clarified that "[t]he striking or dismissal of a charge of prior conviction . . . is not the equivalent of a determination that defendant did not in fact suffer the conviction [citations]; such judicial action is taken . . . 'for the purpose of sentencing' only and 'any dismissal of charges of prior convictions . . . *does not wipe out such prior convictions or prevent them from being considered in connection with later convictions*' [citation]." (*Burke, supra,* 47 Cal.2d at p. 51, italics added.) Accordingly, in a Three Strikes case, as in other cases, when a court has struck a prior conviction allegation, it has not "wipe[d] out" that conviction as though the defendant had never suffered it; rather, the conviction remains a part of the defendant's personal history, and a court may consider it when sentencing the defendant for other convictions, including others in the same proceeding. With respect to the latter point, we can discern no reason for applying *Burke* differently simply because two convictions are part of a single proceeding rather than two different proceedings. Such a distinction finds no support in logic, the language of section 1385, or any decision interpreting that section.

Similarly, the standards we enunciated in *Williams* indicate that a trial court has discretion in a Three Strikes case to strike prior conviction allegations on a count-by-count basis. In *Williams*, we instructed trial courts to consider among other things, " ' "individualized considerations" ' " (*Williams, supra,* 17 Cal.4th at p. 159) "such as the nature and circumstances of the defendant's present felonies" and his "prospects." (*Id.* at p. 161.) In many cases, "the nature and circumstances" of the various felonies described in different counts will differ considerably. A court might therefore be justified in striking prior conviction allegations with respect to a relatively minor current felony, while considering those prior convictions with respect to a serious or violent current felony.

The Attorney General argues, however, that in a case such as this one, where both current felonies are for the same or similar crimes, the " ' "individualized considerations" ' " we enumerated in *Williams, supra,* 17 Cal.4th at page 159, do not provide a "principled basis" for treating the felonies

differently. We disagree. Even if the current offenses are virtually identical, a defendant's "prospects" (*id.* at p. 161) will differ greatly from one count to another because a Three Strikes sentence on one count will itself radically alter those prospects. Here, for example, once the trial court had sentenced defendant to a term of 30 years to life for the Kobel burglary, his "prospects" for committing future burglaries diminished significantly.

Thus, the Attorney General's argument proceeds from the false assumption that striking prior conviction allegations with respect to some, but not all, counts is proper only if the current offenses differ in some way from one another, or if they differ in their relationship to the prior convictions. But a defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. (*Burke, supra,* 47 Cal.2d at p. 50.) A trial judge, applying the factors we enumerated in *Romero* and *Williams,* may find adequate justification for striking one or more prior conviction allegations, but may deem appropriate the sentence that results from striking the prior conviction allegations as to only some counts. When a proper basis exists for a court to strike prior conviction allegations as to at least one current conviction, the law does not require the court to treat other current convictions with perfect symmetry if symmetrical treatment would result in an unjust sentence.

The Attorney General, however, points to the requirement in the Three Strikes law that sentencing on distinct current offenses be consecutive (§§ 667, subd. (c)(6)-(8), 1170.12, subd. (a)(6)-(8)) and without any aggregate term limitation (§§ 667, subd. (c)(1), 1170.12, subd. (a)(1)). The Attorney General argues that striking prior conviction allegations with respect to one count, but not with respect to another, undermines this principle of consecutive Three Strikes sentences. Again, we disagree. A requirement that a defendant serve the individual sentences for different current felonies consecutively does not indicate how the trial court should determine the lengths of those individual sentences. Here, for example, the trial court conformed to the consecutive sentencing requirement by ordering that the 16-month sentence for the Gantt burglary be served consecutively to the 30-year-to-life sentence for the Kobel burglary. Therefore, we see nothing in the trial court's action that is inconsistent with the consecutive sentencing requirement in the Three Strikes law. Rather, the court expressly applied that requirement.

The Attorney General also argues that the trial court here "eviscerated" the Three Strikes law, the purpose of which was to restrict the discretion of

"soft-on-crime judges" and "ensure longer prison sentences." We agree with the Attorney General that a primary purpose of the Three Strikes law was to restrict judicial discretion, but the Attorney General's argument merely "begs the question of *how* judicial discretion was to be restricted. The answer to that question can be found only by examining the language of the act." (*Romero, supra,* 13 Cal.4th at p. 528.) The Three Strikes law expressly incorporates the power to strike prior conviction allegations under section 1385, subdivision (a). (§§ 667, subd. (f)(2), 1170.12, subd. (d)(2).) Therefore, rather than eviscerating the Three Strikes law, the trial court in this case *applied* that law, which expressly contemplates the trial court's action.

We also agree with the Attorney General that a primary purpose of the Three Strikes law was "to ensure longer prison sentences" (§ 667, subd. (b)), and we think the law has achieved this purpose both generally and in this case. But our decisions make clear that this purpose is not a mantra that the prosecution can invoke in any Three Strikes case to compel the court to construe the statute so as to impose the longest possible sentence. In fact, the Attorney General concedes—as he must in light of *Romero*—"that the trial court [in this case] had discretion to dismiss the entire case in toto, or dismiss one of the current burglary allegations [or] . . . strike one or more of the prior convictions allegations—as to all counts." Any of these options would have been likely to produce a shorter sentence than the one the trial court imposed here. For example, if the trial court had dismissed count 3 (the Gantt burglary) altogether, the court could have imposed the 30-year-to-life sentence that it stated was "appropriate" for this case.

Similarly, in *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968 [60 Cal.Rptr.2d 93, 928 P.2d 1171] (*Alvarez*), we held that the purpose of "ensur[ing] longer prison sentences" (§ 667, subd. (b)) does not prevent a trial court, in what would otherwise be a Three Strikes case, from exercising its discretion under section 17, subdivision (b), to sentence certain crimes as misdemeanors rather than felonies, thereby taking them outside the scope of the Three Strikes law. (*Alvarez, supra,* 14 Cal.4th at pp. 974-975.) We said that "[w]hile a defendant's recidivist status is undeniably relevant, it is not singularly dispositive." (*Id.* at p. 973; see also *id.* at p. 979.) Though we acknowledged the "legitimacy" of "the public safety *animus*" underlying the Three Strikes law, we stated that "[t]o judicially mandate that a single factor predominate the trial court's exercise of discretion [under section 17, subdivision (b)] would eviscerate the essence of its statutory authority; indeed, it would be one step shy of declaring the three strikes law eliminates the court's discretion entirely." (*Id.* at p. 979.) For the same reason, the purpose of "ensur[ing] longer prison sentences" in Three Strikes cases, while relevant to a court's exercise of its section 1385 discretion, does not "predominate the trial court's exercise of [that] discretion," which "would be one step

shy of declaring the three strikes law eliminates the court's [section 1385] discretion entirely." (*Alvarez, supra,* 14 Cal.4th at p. 979; see also *People* v. *Deloza* (1998) 18 Cal.4th 585, 590-591 [76 Cal.Rptr.2d 255, 957 P.2d 945] [construing the Three Strikes law to permit concurrent sentences despite its express purpose of ensuring longer prison sentences]; *People* v. *Hendrix* (1997) 16 Cal.4th 508, 512-514 [66 Cal.Rptr.2d 431, 941 P.2d 64] [same].)

The Attorney General urges that the Three Strikes law is a single comprehensive and indivisible sentencing scheme that either does or does not apply, but cannot apply in part. This contention is a variant of the argument that prior conviction allegations describe a status that a defendant either does or does not have, but cannot have with respect to one count and not another. In this regard, the Attorney General points out that the prior convictions in this case were alleged only once as to all counts.

We agree with the Attorney General that the Three Strikes law is a single comprehensive and indivisible sentencing scheme that either does or does not apply. However, it is a scheme that expressly incorporates section 1385, subdivision (a), which authorizes trial courts to dismiss prior conviction allegations on a count-by-count basis. (*Burke, supra,* 47 Cal.2d at pp. 51, 52.) Therefore, though a defendant's prior conviction status does not change from one count to another, and though it is appropriate to allege that status only once as to all current counts, *the effect under the Three Strikes law* of a defendant's prior conviction status *may* change from one count to another.

Despite our statement in *Burke,* the Attorney General asserts that *People* v. *Santana* (1986) 182 Cal.App.3d 185 [227 Cal.Rptr. 51] bars a court from striking prior conviction allegations on a count-by-count basis. He quotes *Santana* as follows: "[A] striking is an unconditional deletion of the legal efficacy of the stricken allegation or fact for purposes of a specific proceeding." (*Id.* at p. 190; see also *People* v. *Cattaneo* (1990) 217 Cal.App.3d 1577, 1588-1589 [266 Cal.Rptr. 710] [applying *Santana*].) The *Santana* court also concluded that the order under consideration in that case "was a striking . . . because . . . [u]nder no circumstance, express or implied, could the five-year enhancement be resurrected and imposed at some future point in time." (*Santana, supra,* 182 Cal.App.3d at p. 191.) Taken in context, however, these statements clearly refer only to the sentence for the single conviction at issue in that case. *Santana* did not suggest that a trial court, having struck an allegation as to one conviction, could not use the same allegation when imposing a sentence for a *different* conviction. In fact, the *Santana* court quoted from the portion of *Burke* that expressly permits otherwise. (*Santana, supra,* 182 Cal.App.3d at p. 190, fn. 6.)

Finally, the Attorney General concedes for the sake of argument that courts have discretion to strike prior conviction allegations on a count-by-

count basis and argues that the trial court abused that discretion here. In *Williams*, we considered the scope of review applicable to abuse-of-discretion claims of this sort. We described the factors that a trial court should consider when exercising its section 1385 discretion in a Three Strikes case, and we stated that a reviewing court should consider those same factors. (*Williams, supra*, 17 Cal.4th at p. 161.) Specifically, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part . . . ." (*Ibid.*) We noted, however, that appellate review of a trial court's section 1385 decision is not de novo. We said, "[T]he superior court's order [i]s subject to review for *abuse of discretion*. This standard is *deferential*. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question '*falls outside the bounds of reason*' under the applicable law and the relevant facts [citations]." (*Williams, supra*, 17 Cal.4th at p. 162, italics added.)

Here, we cannot say that the trial court's decision to strike the prior conviction allegations as to count 3 " 'falls outside the bounds of reason.' " (*Williams, supra*, 17 Cal.4th at p. 162.) The court sentenced defendant to 31 years and 4 months to life in state prison. This sentence is not lenient. Therefore, the Attorney General cannot claim the sentence is inconsistent with the purpose of the Three Strikes law. Moreover, as the trial court noted, defendant's prior convictions all arose from a single period of aberrant behavior for which he served a single prison term. Defendant cooperated with police, his crimes were related to drug addiction, and his criminal history does not include any actual violence. Cumulatively, all these circumstances indicate that "defendant may be deemed outside the [Three Strikes] scheme's spirit," at least "in part," and that the trial court acted within the limits of its section 1385 discretion. (*Williams, supra*, 17 Cal.4th at p. 161.)[3]

## CONCLUSION

We conclude that a trial court in a Three Strikes case may exercise its discretion under section 1385, subdivision (a), so as to dismiss a prior conviction allegation with respect to one count, but not with respect to

---

[3]The dissent accuses us of sacrificing principle for expediency in permitting the trial court to sentence defendant to prison for 31 years to life rather than 58 years to life. (Dis. opn., *post*, at p. 504.) We suggest the statutory language is not so crystal clear that anyone disagreeing with the dissenting view must be unprincipled. Moreover, despite the dissent's rhetorical flair, the fact remains that the trial court did impose a Three Strikes sentence in this case. We merely find it had discretion not to impose it twice.

another. We also conclude that the trial court here did not abuse this discretion. Accordingly, we reverse the judgment of the Court of Appeal and remand for proceedings consistent with our opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., and Werdegar, J., concurred.

**BROWN, J.**—I respectfully dissent.

This case asks the age-old question: does judicial commitment to principle matter? The majority gives the modern answer. Not if it gets in the way of expediency.[1]

The "Three Strikes" law reflects the public's long-simmering frustration with perceived laxity in a criminal justice system that allowed repeatedly convicted felons to be released after serving modest sentences with time off for good behavior. All too often, this revolving door led to more crimes, new victims, and greater tragedies. The public saw "soft on crime" judges who were more solicitous of criminal defendants than public safety as the problem; they viewed Three Strikes as the solution.

The Three Strikes sentencing scheme requires full consecutive terms when a defendant with qualifying priors is convicted of multiple current felonies which constitute separate criminal episodes. It provides a comprehensive sentencing framework under which a qualifying strike affects all felony counts and governs sentencing on each count. (See, e.g., Pen. Code, § 667, subd. (c)(6), (7) [providing mandatory sentencing on all current offenses in specified circumstances]; *id.*, § 667, subd. (c)(8) [providing mandatory sentencing even on counts not tried in current proceeding].)

This integrated sentencing scheme, designed to be applied to all cases coming within its terms, does not admit of half measures. Once made operative by pleading and proof of one or more prior serious or violent felony convictions, neither the initiative nor the legislative version of Three Strikes contains any mechanism for avoiding its full consequences. The law did not contemplate—and was in fact designed to prevent—the judge being the ultimate arbiter of the "just" sentence.

Under our precedents, the trial court retains discretion under Penal Code section 1385 or Penal Code section 17, subdivision (b), to remove a case from the reach of the law. (See *People* v. *Superior Court* (*Alvarez*) (1997) 14

---

[1]The majority complains "the statutory language is not so crystal clear." (Maj. opn., *ante*, at p. 503, fn. 3.) The intent, however, is. What part of "no" do they not understand?

Cal.4th 968 [60 Cal.Rptr.2d 93, 928 P.2d 1171]; *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] *(Romero).*) But, until today, in choosing to rely upon these latter statutes, a trial court had to make a principled determination that the defendant did not come within the spirit of the Three Strikes law and therefore should not be subject to its letter.

Thus, I disagree that a court can dismiss prior convictions on a count-by-count basis. Moreover, even if, in rare cases, a court has that power, the principles we articulated in our recent precedents bar the trial court from doing so here.

In *Romero*, we held that a trial court may strike prior felony conviction allegations in cases arising under the Three Strikes law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.) The power to do so arises under Penal Code section 1385, subdivision (a) (section 1385(a)), which authorizes a trial court to dismiss a criminal action "in furtherance of justice" on its own motion. *(Romero, supra,* 13 Cal.4th at p. 504.) But, unless carefully circumscribed, the power to strike prior felony conviction allegations "in furtherance of justice," which *Romero* itself described as an "amorphous concept" *(id.* at p. 530), carries with it the real potential for undermining the intent of the Three Strikes law itself—namely, "to restrict courts' discretion in sentencing repeat offenders" *(id.* at p. 528).

In *People* v. *Williams* (1998) 17 Cal.4th 148, 160 [69 Cal.Rptr.2d 917, 948 P.2d 429] *(Williams)*, we again acknowledged that "what is 'just' is formless. [Citation.]" Nonetheless, in order to effectuate the obvious intent of the Three Strikes law to restrict judicial discretion, "we undert[ook] to render Penal Code section 1385(a)'s concept of 'furtherance of justice' somewhat more determinate." *(Williams, supra,* 17 Cal.4th at p. 160.) We concluded that "in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to Penal Code section 1385(a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies. If it is striking or vacating an allegation or finding, it must set forth its reasons in an order entered on the minutes, and if it is reviewing the striking or vacating of such allegation or finding, it must pass on the reasons so set forth." *(Williams, supra,* 17 Cal.4th at p. 161.) We emphasized

that "no weight whatsoever may be given to factors extrinsic to the [Three Strikes] scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant. [Citation.]" (*Ibid.*; see also *People* v. *Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at p. 980.)

While professing to follow *Williams*, *supra*, 17 Cal.4th 148, in reality, the majority tosses aside its carefully crafted limits on judicial discretion. The majority rejects what it deems "the false assumption that striking prior conviction allegations with respect to some, but not all, counts is proper only if the current offenses differ in some way from one another, or if they differ in their relationship to the prior convictions." (Maj. opn., *ante*, at p. 500.) Instead, notwithstanding *Williams*'s unequivocal holding that "bare antipathy to the consequences for any given defendant" should be given "no weight whatsoever" (17 Cal.4th at p. 161), the majority now concludes that the "overarching consideration" in determining whether to strike prior felony conviction allegations with respect to some, but not all, counts is the total length of a defendant's sentence "because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences. [Citation.]" (Maj. opn., *ante*, at p. 500.) In other words, the "overarching consideration" in determining whether to strike prior felony conviction allegations "in furtherance of justice" under section 1385(a) is the trial court's antipathy to the sentence the law would otherwise require. The court may achieve the result it deems "just" by any means necessary.

One need only compare the facts of this case to the facts of *Williams*, *supra*, 17 Cal.4th 148, to see how standardless things have become. In *Williams*, in concluding that the trial court had abused its discretion in striking one of Williams's prior felony convictions, we pointed to his failure to "follow through in efforts to bring his substance abuse problem under control." (17 Cal.4th at p. 163.) Here, in upholding the trial court's decision to strike, the majority points to the fact defendant's crimes "were related to drug addiction." (Maj. opn., *ante*, at p. 503.) In *Williams*, in concluding that the trial court had abused its discretion in striking one of Williams's prior felony convictions, we noted that "[a]s to his present felony: It is a conviction of driving under the influence that followed three other convictions of driving under the influence; 'the existence of such convictions reveals that [he] had been taught, through the application of formal sanction, that [such] criminal conduct was unacceptable—but had failed or refused to learn his lesson' [citation]." (17 Cal.4th at p. 163.) Here, in upholding the trial court's decision to strike, the majority glosses over the fact defendant's two present convictions for burglary followed quickly on the heels of five previous convictions for exactly the same offense. In *Williams*, in concluding that the

trial court had abused its discretion in striking one of Williams's prior felony convictions, we observed that the only time he had not been engaged in criminal activity was when he was in prison or jail. (*Ibid.*) Here, in upholding the trial court's decision to strike, the majority ignores the fact defendant admitted to having committed six burglaries shortly after his release from prison and while still on parole for the five prior burglaries.

In *Romero*, we said a court "abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty." (*Romero, supra*, 13 Cal.4th at p. 531.) Here, we find defendant's cooperation with police helps to place him outside the spirit of Three Strikes. And what cooperation it was. As to the crimes of which defendant is convicted, there was no doubt of his participation. In the first, he helpfully left his wallet and his driver's license in the rubble. The victim of the second burglary arrived home in time to observe defendant fleeing with her property. Apprehended moments later with the loot, he confessed to additional burglaries, hoping to make a deal to avoid Three Strikes punishment.

The real effect of today's decision is to make the defendant's eligibility for punishment under Three Strikes a factor in mitigation. When a defendant receives a lengthy Three Strikes term on the first of multiple counts, the trial court may disregard the law as to all other counts. Of course, because a single Three Strikes sentence of 25 years to life is severe, judges will be inclined to impose only 1 such sentence regardless of the circumstances. Thus, the majority has in effect taken *Romero* out of its box. *Romero* is no longer reserved for the rare case involving a particularly harsh sentence for a relatively minor offense. Courts may now routinely apply *Romero* to the benefit of recidivists for whom such solicitude is not appropriate. That is not what I heard the voters demand when they enacted the Three Strikes law. Three Strikes was not about judicial discretion; it was about accountability. It was not about "just" sentences; it was about swift, certain, and harsh retribution. Moreover, by encouraging courts to impose only a single Three Strikes sentence regardless of the circumstances, the majority's decision rewards the industrious career criminal—after the first count, the rest are virtually free.

Exercise of this purported "discretion" does not conform to the concept of "furtherance of justice" delineated in *Williams*. It is nothing less than a return to the subjective sentencing practices the electorate and the Legislature intended to circumscribe. Compounding the situation, the majority's analysis affords no principled standard by which appellate courts can meaningfully review the trial court's action. (Cf. *Williams, supra*, 17 Cal.4th at p. 161.)

Nevertheless, the majority claims the "reasoning of *Romero* and the standards we enunciated in *Williams* logically support the trial court's action in this case." (Maj. opn., *ante*, at p. 499.) This is true only if *Romero* sought to enshrine an "amorphous concept" (*Romero, supra,* 13 Cal.4th at p. 530) designed to undermine Three Strikes' clear intent to "restrict courts' discretion in sentencing repeat offenders" (*id.* at p. 528). If that was *Romero*'s purpose, its promise has been quickly fulfilled.

The sentence imposed here was lengthy. But that is beside the point. It was still less than the law required. When the Legislature enacted, and the voters passed, the Three Strikes law, they intended to restrict trial courts' discretion in sentencing. The trial court here had it right when it initially observed that striking defendant's prior felony convictions "would be for the sole purpose of avoiding the sentence I'm required to hand down by law" and that "if the Three Strikes law was meant for anyone it was meant for Mr. Garcia." Today's holding eviscerates the intent of the Three Strikes law. I would affirm the decision of the Court of Appeal.

Respondent's petition for a rehearing was denied July 21, 1999, and on July 21, 1999, and August 11, 1999, the opinion was modified to read as printed above.